IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| EVERTON BROWN, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-12-1954 |
| U.S. DEPARTMENT OF JUSTICE, | * |
| Defendant. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

MEMORANDUM OPINION

Everton Brown, *pro se*, sued the U.S. Department of Justice
("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552.  Pending are DOJ's motion to dismiss or, in the
alternative, for summary judgment, Brown's motion for summary
judgment, and several other motions.[1]  For the following reasons,
DOJ's motion to dismiss for lack of subject matter jurisdiction
will be granted.  The other motions will be denied as moot.[2]

_____

[1] Also pending are Brown's motions to vacate the Court's Order
extending the time for DOJ to answer, for telephone notification
of mailed correspondence, for increased notification of all
correspondence, and to compel release of documents.

[2] Because this Court lacks subject matter jurisdiction, it cannot
consider the merits of the other motions.

I.   Background[3]

Brown believes that the Federal Bureau of Investigation
("FBI") and its agents--"the general public, Military, Ex-
military and every law enforcement agent within [his]
surroundings"--"have watched and enter[ed] [his] home for the
past five years intending to be a phantom, to enter [his] home
and do surveillance without being notice[d]."   ECF No. 18-1 at
9, 11; *see generally* ECF Nos. 1, 18 Exs., 19 Exs.   This suit
seeks records of these activities.

A.   The FBI's Records Storage[4]

The FBI's Central Records System ("CRS") contains records
of "administrative, applicant, criminal, personnel, and other
files compiled for law enforcement purposes."   ECF No. 11-2 at 4
¶ 14.   The primary purpose of the CRS is for assisting
investigations, although it is also used for FOIA requests.   *Id.*
The CRS data "consists of a numerical sequence of files, called
FBI 'classifications,' which are broken down according to
subject matter" which "may relate to an individual organization,
company, publication, activity or foreign intelligence matter

---

[3] On a motion contesting the factual basis of subject matter
jurisdiction, the Court may consider evidence outside the
pleadings.   *See Richmond, Fredericksburg & Potomac R.R. Co. v.
United States*, 945 F.2d 765, 768 (4th Cir. 1991).

[4] This information is from the affidavit of David M. Hardy, Chief
of the Record/Information Dissemination Section of the Records
Management Division of the FBI.   *See* ECF No. 11-2.

2

(or program)."  *Id.*  Records are maintained at FBI headquarters
and field offices.  *Id.*  The FBI uses the Automated Case Support
System ("ACS") to search the CRS.  *Id.*  Names other than
subjects, suspects, and victims, are indexed in the ACS in the
discretion of the Special Agent on the case or, occasionally,
Supervisory Special Agents.  *Id.* at 7 ¶ 19.

CRS data is stored in General Indices, which are arranged
alphabetically.  *Id.* at 5 ¶ 16.  There are two categories of
General Indices entries: (1) "main" entries, which "carr[y] the
name corresponding with a subject of a file contained in the
CRS," and "references" or "cross-references," which "are
generally only a mere mention or reference to an individual,
organization or subject matter contained in a document located
in another 'main' file on a different subject matter."  *Id.*

Separate from the CSR is the Electronic Surveillance
("ELSUR") indices, which "maintain information whose electronic
and/or voice communications have been intercepted [via]
consensual electronic surveillance (and/or sought) electronic
surveillance conducted by the FBI."  *Id.* at 7-8 ¶¶ 20-21.

B.   Brown's FOIA Request

On March 16, 2012, Brown sent a letter to the FBI
"requesting access to and copies of all investigating records
pertaining of surveillance of [his] existence."  ECF No. 11-2 at
12.  On March 20, 2012, the FBI indicated that Brown's letter

3

did not contain sufficient information for searching the CRS and
sent Brown a request form. *Id.* at 15. On March 23, 2012, Brown
returned the completed form. *Id.* at 18. On March 28, 2012, the
FBI acknowledged receipt of Brown's request. *Id.* at 21.

After receiving Brown's request, the FBI searched the CRS
main files, "utilizing a six-way phonetic breakdown of his name,
including any variations of his first, middle, or last name that
sound similar or are similar, but spelled differently, than
(*sic*) his names such as 'Everton Brown, E. Brown, Garfield
Brown, E.G. Brown, and G. Brown.'" *Id.* at 9 ¶ 24. The search
was unsuccessful. *Id.* Although apparently not reported to
Brown, the FBI also searched the ELSUR indices without success.
*See id.* at 9 ¶ 26.

On March 29, 2012, the FBI responded that it was unable to
identify any main file records responsive to his request. *Id.*
at 23. "In accordance with standard FBI practice and pursuant
to FOIA exemption (b)(7)(E) [5] . . . th[e] response neither
confirm[ed] nor deni[ed] the existence of [Brown's] name on any
watch lists." *Id.*

---

[5] This provision exempts disclosure of records "compiled for law
enforcement purposes" to the extent that the records "would
disclose techniques and procedures for law enforcement
investigations or prosecutions, or would disclose guidelines for
law enforcement investigations or prosecutions if such
disclosure could reasonably be expected to risk circumvention of
the law." 5 U.S.C. § 552(b)(7)(E).

On April 5, 2012,[6] Brown appealed the FBI's decision.  *Id.*
at 26.  On June 5, 2012, DOJ affirmed the FBI's use of the
(7)(E) exception and its finding of no responsive records.  *Id.*
at 30.

    C.   Litigation History

On June 29, 2012, Brown sued DOJ for access to documents
allegedly withheld by the FBI.[7]  ECF No. 1.  After being
informed of the suit, the FBI ran additional searches of the
CRS, this time including cross-references, and ELSUR.  ECF No.
11-2 at 9 ¶¶ 25-26.  Although one cross-reference file was
identified as potentially responsive, the field office holding
the file was unable to locate it.  *Id.* at 9 ¶ 25.  Hardy asserts
that if the file is located, it will be reviewed for
responsiveness and processed under standard procedures.  *Id.* at
9 n.3

---

[6] On April 17, 2012, DOJ received the appeal, and, on April 23,
2012, confirmed its receipt.  ECF No. 11-2 at 26, 28.

[7] The complaint alleges misdeeds Brown attributes to the FBI,
including (1) Brown being stalked and fired at by unknown
individuals, (2) a neighbor threatening Brown with a knife and
cutting through walls of his house, (3) "uncountable amount of
problem[s] related to possessing illegal items without cause",
(4) monitoring his "Home, Vehicle, public transactions,
employment, [his] electronic communication, by Aircraft,
Automobile, personnel, general public, Searching, vandalizing,
[and] removing items of benefit," (5) searching Brown's mother's
house daily, and (6) unjustly targeting Brown despite his lack
of associations with "illegal activates (*sic*) or conspiracy of
any kind."  ECF No. 1 at 2-3.

On September 12, 2012, DOJ moved for an extension of time to answer, ECF No. 6, which the Court granted the next day, ECF No. 7.  On September 18, 2012, Brown moved to vacate the Order granting the extension of time, asserting that he had "endured 1696 days to date being aware of the malicious style of surveillance" and would be harmed by a delay.  ECF No. 8.

On September 26, 2012, Brown moved "for increased notification of all corresponden[ce] related to plaintiff['s] complaint" citing "continuous tampering of United States First-Class Mail and Parcels within the recent past years" and a missing page in the complaint he was issued for service.  ECF No. 9.  On October 18, 2012, Brown again moved for additional notification, supplying additional attachments.  ECF No. 10.  On November 1, 2012, he filed supplemental attachments.  ECF No. 12.

On November 1, 2012, DOJ moved to dismiss for lack of subject matter jurisdiction and failure to state a claim or, alternatively, for summary judgment.  ECF No. 11.  Along with Hardy's declaration, DOJ attached a *Baltimore Sun* article about Brown and the alleged searches and invasions by the authorities.[8] ECF Nos. 11-2, 11-3.

---

[8] The article, entitled "Crazy or a target?" was posted on *Baltimore Sun's* website on October 3, 2008.  ECF No. 11-3.  It describes Brown's insistence that his home was being repeatedly searched and his protesting the searches in front of the U.S.

On December 3, 2012, Brown filed several documents, which
DOJ has construed as an opposition to its motion.  ECF Nos. 17-
19; *see* ECF No. 20.  First, Brown filed an "Introduction –
Biography" describing his personal and business background and a
trespassing conviction.  ECF No. 17.  Brown also filed a
response that discussed the government's *Baltimore Sun* article,
his FOIA request, his belief that he is not on a watch list, and
evidence of the FBI and its agents' destruction of his property.
ECF No. 18-1.  He attached numerous exhibits including multiple
versions of the *Baltimore Sun* article, videos of an altercation
with Sam's Club employees who wanted to search his bag, police
reports about Brown's disputes with his neighbors, videos
showing lights purported to be aircraft spying on him, and
photographs of damage the FBI allegedly caused to his dog,
circuit breaker box, car, dishwasher, fruits, vegetables, and
other items.  *See* ECF Nos. 18-2 to 18-27, 19 to 19-20.  On
December 17, 2012, Brown wrote to the Court about a recent
burglary.

On February 12, 2013, Brown moved for summary judgment,
asserting that the FBI had failed to show an adequate search for
responsive documents.  ECF No. 22.  On February 28, 2013, DOJ

---

Courthouse.  *Id*.  The tone of the article expresses the author's
disbelief of Brown's allegations.

opposed the motion, ECF no. 23, and on March 18, 2013, Brown replied, ECF No. 24.

II.  Analysis

DOJ asserts that this Court lacks subject matter jurisdiction over Brown's claims, and it is entitled to summary judgment because it has complied with FOIA.  ECF No. 11.  The Court must address subject matter jurisdiction first.  *See Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).

DOJ contends that this Court lacks jurisdiction over this case because it is frivolous, and it has not withheld any documents.  ECF No. 11-1 at 13.  FOIA grants this Court jurisdiction to "order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  "Federal jurisdiction is dependent upon a showing that an agency has (1) improperly; (2) withheld; (3) agency records."  *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980) (internal quotation marks omitted).

Additionally, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit."  *Hagans v. Lavine*, 415 U.S. 528, 537 (1974).  "Constitutional insubstantiality for this purpose has been equated with such concepts as essentially fictitious, wholly

insubstantial, obviously frivolous, and obviously without merit." *Id.* at 537; *see Garraghty v. Va. Ret. Sys.*, 200 F. App'x 209 (4th Cir. 2006).

The central premise of Brown's claim for documents is that documents related to his surveillance must exist--and have been withheld by the FBI--because the FBI has been monitoring him. *See* ECF No. 1. However, several of the incidents alleged in the complaint contain no allegations of involvement by the FBI. *See id.* at 2-3. Brown does, however, present the fanciful allegation that "[t]he FBI have monitored plaintiff['s] Home, Vehicle, public transactions, employment, plaintiff's electronic communication, by Aircraft, Automobile, personnel, general public, Searching, vandalizing, [and] removing items of benefit." *Id.* at 2.

Brown's additional filings confirm the insubstantial nature of his claim. The Court has reviewed the numerous exhibits[9] attached to his motion to compel, and nothing therein suggests any involvement by the FBI[10] or any campaign to terrorize him.[11]

---

[9] Three of the exhibits are DVDs of video recordings. ECF Nos. 18-18, 19-16, 19-20. Although the Court reviewed Brown's video of an incident at Sam's Club and his recordings of "aerial surveillance," ECF Nos. 18-18, 19-20, it was unable to review Brown's security system footage because it was password protected, ECF No. 19-16.

[10] Even if there were anything connecting these incidents to law enforcement, there is no indication that the FBI--as opposed to another law enforcement agency--is the perpetrator.

There is no indication that, *inter alia*, the stabbing of Brown's fruit, ECF No. 19-8, damage to his car, ECF No. 19-7, or difficulties with his neighbors, *e.g.*, ECF Nos. 18-10, 18-11, 18-24, 18-25, involved the FBI.  The videos of Sam's Club employees trying to search Brown's bag and remove him from the premises reveal no FBI involvement.  ECF No. 18-18.

Similarly, Brown's videos of purported aerial surveillance by the FBI generally show only stars or other celestial bodies.[12] ECF No. 19-20.  Although a few videos depict actual aircraft at low altitudes, the Court notes that the Baltimore/Washington International Thurgood Marshall Airport is not far from where Brown was filming.[13]  *See Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) (taking judicial notice of geography); *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980) (noting that geography is suitable for judicial notice).

---

[11] Further, the information Brown has provided indicates no reason for the FBI to be monitoring him.  Brown himself appears to believe that the FBI's surveillance is baseless because he has "never been associated, connected, [or] involved in any form of illegal active[ities] or conspiracy of any kind and is unjustly targeted."  ECF No. 1 ¶ 3(6).

[12] In some of the videos Brown indicates that the aircraft are pretending to be stars.

[13] The majority of the videos were filmed at Brown's home in Baltimore, and one was at a Walmart in Ellicott City.

Brown's claim is insubstantial.  His allegations of surveillance by the FBI have no support.  Further, the record shows that there were no documents for the FBI to withhold.[14] Accordingly, this Court lacks jurisdiction, and the motion to dismiss will be granted.[15]  Brown's motions will be denied as moot.

III. Conclusion

For the reasons stated above, DOJ's motion to dismiss for lack of subject matter jurisdiction will be granted.  Brown's motions will be denied as moot.

_6/12/13_
Date

_____
William D. Quarles, Jr.
United States District Judge

_____

[14] The single cross-reference is not to the contrary.  Under the FBI's classification system, such detailed surveillance as Brown alleges would not be contained in a cross-reference.  See ECF No. 11-2 at 5 ¶ 16.

[15] See Kissinger, 445 U.S. at 150; Hagans, 415 U.S. at 537; Goldgar v. Office of Admin., Exec. Office of the President, 26 F.3d 32, 34 (5th Cir. 1994) (no jurisdiction over FOIA request for documents about plaintiff's telepathy); Murray v. U.S. Postal Service, No. Civ.A. L-98-445, 1998 WL 476197, at *1-2 (D. Md. Mar. 31, 1998) (no jurisdiction over FOIA request alleging that Postal Inspectors disseminated plaintiff's medical records and investigated his right to attend church).