IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

EVERTON BROWN,

    Plaintiff,

v.                           CIVIL NO.: WDQ-12-1954

U.S. DEPARTMENT OF JUSTICE,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Everton Brown, *pro se*, sued the U.S. Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Pending are DOJ's motion to dismiss or, in the alternative, for summary judgment, Brown's motion for summary judgment, and several other motions.[1] For the following reasons, DOJ's motion to dismiss for lack of subject matter jurisdiction will be granted. The other motions will be denied as moot.[2]

---

[1] Also pending are Brown's motions to vacate the Court's Order extending the time for DOJ to answer, for telephone notification of mailed correspondence, for increased notification of all correspondence, and to compel release of documents.

[2] Because this Court lacks subject matter jurisdiction, it cannot consider the merits of the other motions.

I.  Background[3]

Brown believes that the Federal Bureau of Investigation ("FBI") and its agents--"the general public, Military, Ex-military and every law enforcement agent within [his] surroundings"--"have watched and enter[ed] [his] home for the past five years intending to be a phantom, to enter [his] home and do surveillance without being notice[d]."  ECF No. 18-1 at 9, 11; *see generally* ECF Nos. 1, 18 Exs., 19 Exs.  This suit seeks records of these activities.

A.  The FBI's Records Storage[4]

The FBI's Central Records System ("CRS") contains records of "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes."  ECF No. 11-2 at 4 ¶ 14.  The primary purpose of the CRS is for assisting investigations, although it is also used for FOIA requests.  *Id.*  The CRS data "consists of a numerical sequence of files, called FBI 'classifications,' which are broken down according to subject matter" which "may relate to an individual organization, company, publication, activity or foreign intelligence matter

---

[3] On a motion contesting the factual basis of subject matter jurisdiction, the Court may consider evidence outside the pleadings.  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

[4] This information is from the affidavit of David M. Hardy, Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI.  *See* ECF No. 11-2.

(or program)." *Id.* Records are maintained at FBI headquarters and field offices. *Id.* The FBI uses the Automated Case Support System ("ACS") to search the CRS. *Id.* Names other than subjects, suspects, and victims, are indexed in the ACS in the discretion of the Special Agent on the case or, occasionally, Supervisory Special Agents. *Id.* at 7 ¶ 19.

CRS data is stored in General Indices, which are arranged alphabetically. *Id.* at 5 ¶ 16. There are two categories of General Indices entries: (1) "main" entries, which "carr[y] the name corresponding with a subject of a file contained in the CRS," and "references" or "cross-references," which "are generally only a mere mention or reference to an individual, organization or subject matter contained in a document located in another 'main' file on a different subject matter." *Id.*

Separate from the CSR is the Electronic Surveillance ("ELSUR") indices, which "maintain information whose electronic and/or voice communications have been intercepted [via] consensual electronic surveillance (and/or sought) electronic surveillance conducted by the FBI." *Id.* at 7-8 ¶¶ 20-21.

B. Brown's FOIA Request

On March 16, 2012, Brown sent a letter to the FBI "requesting access to and copies of all investigating records pertaining of surveillance of [his] existence." ECF No. 11-2 at 12. On March 20, 2012, the FBI indicated that Brown's letter

3

did not contain sufficient information for searching the CRS and sent Brown a request form. *Id.* at 15. On March 23, 2012, Brown returned the completed form. *Id.* at 18. On March 28, 2012, the FBI acknowledged receipt of Brown's request. *Id.* at 21.

After receiving Brown's request, the FBI searched the CRS main files, "utilizing a six-way phonetic breakdown of his name, including any variations of his first, middle, or last name that sound similar or are similar, but spelled differently, than (*sic*) his names such as 'Everton Brown, E. Brown, Garfield Brown, E.G. Brown, and G. Brown.'" *Id.* at 9 ¶ 24. The search was unsuccessful. *Id.* Although apparently not reported to Brown, the FBI also searched the ELSUR indices without success. *See id.* at 9 ¶ 26.

On March 29, 2012, the FBI responded that it was unable to identify any main file records responsive to his request. *Id.* at 23. "In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E)[5] . . . th[e] response neither confirm[ed] nor deni[ed] the existence of [Brown's] name on any watch lists." *Id.*

---

[5] This provision exempts disclosure of records "compiled for law enforcement purposes" to the extent that the records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

4

On April 5, 2012,[6] Brown appealed the FBI's decision. *Id.* at 26. On June 5, 2012, DOJ affirmed the FBI's use of the (7)(E) exception and its finding of no responsive records. *Id.* at 30.

C. Litigation History

On June 29, 2012, Brown sued DOJ for access to documents allegedly withheld by the FBI.[7] ECF No. 1. After being informed of the suit, the FBI ran additional searches of the CRS, this time including cross-references, and ELSUR. ECF No. 11-2 at 9 ¶¶ 25-26. Although one cross-reference file was identified as potentially responsive, the field office holding the file was unable to locate it. *Id.* at 9 ¶ 25. Hardy asserts that if the file is located, it will be reviewed for responsiveness and processed under standard procedures. *Id.* at 9 n.3

---

[6] On April 17, 2012, DOJ received the appeal, and, on April 23, 2012, confirmed its receipt. ECF No. 11-2 at 26, 28.

[7] The complaint alleges misdeeds Brown attributes to the FBI, including (1) Brown being stalked and fired at by unknown individuals, (2) a neighbor threatening Brown with a knife and cutting through walls of his house, (3) "uncountable amount of problem[s] related to possessing illegal items without cause", (4) monitoring his "Home, Vehicle, public transactions, employment, [his] electronic communication, by Aircraft, Automobile, personnel, general public, Searching, vandalizing, [and] removing items of benefit," (5) searching Brown's mother's house daily, and (6) unjustly targeting Brown despite his lack of associations with "illegal activates (*sic*) or conspiracy of any kind." ECF No. 1 at 2-3.

On September 12, 2012, DOJ moved for an extension of time to answer, ECF No. 6, which the Court granted the next day, ECF No. 7. On September 18, 2012, Brown moved to vacate the Order granting the extension of time, asserting that he had "endured 1696 days to date being aware of the malicious style of surveillance" and would be harmed by a delay. ECF No. 8.

On September 26, 2012, Brown moved "for increased notification of all corresponden[ce] related to plaintiff['s] complaint" citing "continuous tampering of United States First-Class Mail and Parcels within the recent past years" and a missing page in the complaint he was issued for service. ECF No. 9. On October 18, 2012, Brown again moved for additional notification, supplying additional attachments. ECF No. 10. On November 1, 2012, he filed supplemental attachments. ECF No. 12.

On November 1, 2012, DOJ moved to dismiss for lack of subject matter jurisdiction and failure to state a claim or, alternatively, for summary judgment. ECF No. 11. Along with Hardy's declaration, DOJ attached a *Baltimore Sun* article about Brown and the alleged searches and invasions by the authorities.[8] ECF Nos. 11-2, 11-3.

---

[8] The article, entitled "Crazy or a target?" was posted on *Baltimore Sun's* website on October 3, 2008. ECF No. 11-3. It describes Brown's insistence that his home was being repeatedly searched and his protesting the searches in front of the U.S.

6

On December 3, 2012, Brown filed several documents, which DOJ has construed as an opposition to its motion. ECF Nos. 17-19; see ECF No. 20. First, Brown filed an "Introduction - Biography" describing his personal and business background and a trespassing conviction. ECF No. 17. Brown also filed a response that discussed the government's *Baltimore Sun* article, his FOIA request, his belief that he is not on a watch list, and evidence of the FBI and its agents' destruction of his property. ECF No. 18-1. He attached numerous exhibits including multiple versions of the *Baltimore Sun* article, videos of an altercation with Sam's Club employees who wanted to search his bag, police reports about Brown's disputes with his neighbors, videos showing lights purported to be aircraft spying on him, and photographs of damage the FBI allegedly caused to his dog, circuit breaker box, car, dishwasher, fruits, vegetables, and other items. See ECF Nos. 18-2 to 18-27, 19 to 19-20. On December 17, 2012, Brown wrote to the Court about a recent burglary.

On February 12, 2013, Brown moved for summary judgment, asserting that the FBI had failed to show an adequate search for responsive documents. ECF No. 22. On February 28, 2013, DOJ

---

Courthouse. *Id.* The tone of the article expresses the author's disbelief of Brown's allegations.

opposed the motion, ECF no. 23, and on March 18, 2013, Brown replied, ECF No. 24.

II. Analysis

DOJ asserts that this Court lacks subject matter jurisdiction over Brown's claims, and it is entitled to summary judgment because it has complied with FOIA. ECF No. 11. The Court must address subject matter jurisdiction first. *See Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).

DOJ contends that this Court lacks jurisdiction over this case because it is frivolous, and it has not withheld any documents. ECF No. 11-1 at 13. FOIA grants this Court jurisdiction to "order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). "Federal jurisdiction is dependent upon a showing that an agency has (1) improperly; (2) withheld; (3) agency records." *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980) (internal quotation marks omitted).

Additionally, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 537 (1974). "Constitutional insubstantiality for this purpose has been equated with such concepts as essentially fictitious, wholly

insubstantial, obviously frivolous, and obviously without merit." Id. at 537; see Garraghty v. Va. Ret. Sys., 200 F. App'x 209 (4th Cir. 2006).

The central premise of Brown's claim for documents is that documents related to his surveillance must exist--and have been withheld by the FBI--because the FBI has been monitoring him. See ECF No. 1. However, several of the incidents alleged in the complaint contain no allegations of involvement by the FBI. See id. at 2-3. Brown does, however, present the fanciful allegation that "[t]he FBI have monitored plaintiff['s] Home, Vehicle, public transactions, employment, plaintiff's electronic communication, by Aircraft, Automobile, personnel, general public, Searching, vandalizing, [and] removing items of benefit." Id. at 2.

Brown's additional filings confirm the insubstantial nature of his claim. The Court has reviewed the numerous exhibits[9] attached to his motion to compel, and nothing therein suggests any involvement by the FBI[10] or any campaign to terrorize him.[11]

---

[9] Three of the exhibits are DVDs of video recordings. ECF Nos. 18-18, 19-16, 19-20. Although the Court reviewed Brown's video of an incident at Sam's Club and his recordings of "aerial surveillance," ECF Nos. 18-18, 19-20, it was unable to review Brown's security system footage because it was password protected, ECF No. 19-16.

[10] Even if there were anything connecting these incidents to law enforcement, there is no indication that the FBI--as opposed to another law enforcement agency--is the perpetrator.

There is no indication that, *inter alia*, the stabbing of Brown's fruit, ECF No. 19-8, damage to his car, ECF No. 19-7, or difficulties with his neighbors, *e.g.*, ECF Nos. 18-10, 18-11, 18-24, 18-25, involved the FBI. The videos of Sam's Club employees trying to search Brown's bag and remove him from the premises reveal no FBI involvement. ECF No. 18-18.

Similarly, Brown's videos of purported aerial surveillance by the FBI generally show only stars or other celestial bodies.[12] ECF No. 19-20. Although a few videos depict actual aircraft at low altitudes, the Court notes that the Baltimore/Washington International Thurgood Marshall Airport is not far from where Brown was filming.[13] *See Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) (taking judicial notice of geography); *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980) (noting that geography is suitable for judicial notice).

---

[11] Further, the information Brown has provided indicates no reason for the FBI to be monitoring him. Brown himself appears to believe that the FBI's surveillance is baseless because he has "never been associated, connected, [or] involved in any form of illegal active[ities] or conspiracy of any kind and is unjustly targeted." ECF No. 1 ¶ 3(6).

[12] In some of the videos Brown indicates that the aircraft are pretending to be stars.

[13] The majority of the videos were filmed at Brown's home in Baltimore, and one was at a Walmart in Ellicott City.

Brown's claim is insubstantial. His allegations of surveillance by the FBI have no support. Further, the record shows that there were no documents for the FBI to withhold.[14] Accordingly, this Court lacks jurisdiction, and the motion to dismiss will be granted.[15] Brown's motions will be denied as moot.

III. Conclusion

For the reasons stated above, DOJ's motion to dismiss for lack of subject matter jurisdiction will be granted. Brown's motions will be denied as moot.

_6/12/17_
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge

---

[14] The single cross-reference is not to the contrary. Under the FBI's classification system, such detailed surveillance as Brown alleges would not be contained in a cross-reference. See ECF No. 11-2 at 5 ¶ 16.

[15] See Kissinger, 445 U.S. at 150; Hagans, 415 U.S. at 537; Goldgar v. Office of Admin., Exec. Office of the President, 26 F.3d 32, 34 (5th Cir. 1994) (no jurisdiction over FOIA request for documents about plaintiff's telepathy); Murray v. U.S. Postal Service, No. Civ.A. L-98-445, 1998 WL 476197, at *1-2 (D. Md. Mar. 31, 1998) (no jurisdiction over FOIA request alleging that Postal Inspectors disseminated plaintiff's medical records and investigated his right to attend church).